COPY

FILED

1  BONNETT, FAIRBOURN,
     FRIEDMAN & BALINT, P.C.
2  ANDREW S. FRIEDMAN (AZ005425)
   ELAINE A. RYAN (AZ 012870)
3  PATRICIA N. SYVERSON (CA 203111; AZ 020191)
   2901 N. Central Avenue, Suite 1000
4  Phoenix, AZ  85012-3311
   Telephone:    (602) 274-1100
5  Facsimile:    (602) 798-5825

6  BONNETT, FAIRBOURN,
     FRIEDMAN & BALINT, P.C.
7  TODD D. CARPENTER (234464)
   600 West Broadway, Suite 900
8  San Diego, CA 92101
   Telephone:    (619) 756-6978
9  Facsimile:    (602) 798-5825

2009 JUN -2  PM 3:48

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

10

11                    UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  HOBIN CHOI, on behalf of himself and all    Case No. CV09-3940GW (CW)
    others similarly situated,

14                                              CLASS ACTION COMPLAINT
                        Plaintiff,
15
           v.                                   1.  Violation of Unfair
16                                                  Competition Law, Business and
    GENERAL MILLS, INC., a Delaware                 Professions Code §17200
17  corporation,
                                                2.  Unjust Enrichment
18                      Defendant.

19                                                  [JURY TRIAL DEMANDED]

20

21

22

23

24

25

26

27

28

## NATURE OF THE ACTION

1. Defendant manufactures, distributes and sells the Cheerios® line of products (the "Products") in California and throughout the United States.

2. This is a class action challenging Defendant's long term practice of misrepresenting on Product packaging, in commercial advertisements, on its website and in other marketing materials and media that the Products have unique, drug-quality properties that will reduce total and "bad" cholesterol levels and the risk of heart disease and are safe and effective for the prevention or treatment of hypercholesterolemia or coronary heart disease. Plaintiff, on behalf of himself and a Class of California consumers, is seeking a refund of the purchase price of the Products and disgorgement of Defendant's profits derived from the sale of the Products.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this class action under 18 U.S.C. §1332(d) which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal court in any class action in which any member of the Class is a citizen of a state different from any Defendant and in which the matter in controversy exceeds the sum of $5 million exclusive of interest and costs. Plaintiff alleges that the claims of individual class members in this action exceed $5 million in the aggregate, exclusive of interest and costs, and that the total number of members of the proposed Class is greater than 100, as required by 28 U.S.C. § 1332(d)(2), (5). As set forth below, Plaintiff is a citizen of California, whereas Defendant is a citizen of Delaware and/or Minnesota.

4. Venue lies within this District pursuant to 28 U.S.C. § 1391(b)-(c) in that: Defendant General Mills, Inc. conducts business in this District; certain acts giving rise to the claims asserted in this Complaint occurred within this District; the illegal actions of Defendant, as alleged in this Complaint, caused damage to Plaintiff and Class members within this District; and Plaintiff resides within this District.

**THE PARTIES**

5.      Plaintiff Hobin Choi is an individual residing in Los Angeles County, California. During the Class period, he purchased the Product, suffered injury in fact and has lost money and property as a result of the unlawful, unfair, misleading and deceptive advertising described herein.

6.      Defendant General Mills, Inc., is a Delaware corporation with its principal place of business in Minneapolis, Minnesota.    Defendant is responsible for researching, developing, manufacturing, marketing and the distribution of its Products to consumers throughout the United States, including tens of thousands of consumers in California.

**DEFENDANT'S UNLAWFUL CONDUCT**

7.      Defendant manufactures and distributes a line of eleven (11) varieties of Cheerios® ready-to-eat cereals including Apple Cinnamon Cheerios, Banana Nut Cheerios, Berry Burst Cheerios - Triple Berry, Cheerios, Cheerios Oat Cluster Crunch, Frosted Cheerios, Fruity Cheerios, Honey Nut Cheerios, Multi Grain Cheerios, Yogurt Burst Cheerios – Strawberry, and Yogurt Burst Cheerios – Vanilla (hereinafter referred to collectively as "Cheerios" or the "Products").

8.      Defendant represents that in 2008 approximately 12% of the Company's $8 billion in retail sales of its ready-to-eat cereal brands was from the sale of its Cheerios® line of Products which were sold in California and throughout the United States in grocery stores, club and supercenters and discount stores.

9.      Defendant markets its Products in packages that prominently promote the Products' cholesterol lowering and reduction of heart disease benefits (collectively, "health benefits").    For example, Product packages represent that, *inter alia*, that consumption of the Products can lower cholesterol by "10% in one month!" and further states that "Three grams of soluble fiber daily from whole grain oat foods, like Cheerios cereal, in a diet low in saturated fat and cholesterol, may reduce the risk of heart disease. Cheerios cereal provides 1 gram per serving."

10.      The back panel of the original Cheerios® label states that:

A new study proves Cheerios® cereal plus a reduced calorie diet that is low in fat can help lower bad cholesterol about 10% in one month. The foods you eat or don't eat, along with your lifestyle habits, can really make a difference in lowering your

cholesterol. Just follow these daily steps for one month to help lower your cholesterol.

Below that, "bulleted" by depictions of the cereal, are the statements: "Eat two 1½ cup servings of Cheerios cereal" and "Cut 500 calories from your diet."

11.     Further, each Product package refers the consumer to Defendant's website for further information.  Defendant's website represents that: "Made with whole grain, Cheerios is the only ready-to-eat cereal clinically proven to lower cholesterol when eaten as part of a diet low in saturated fat and cholesterol.  The wholesome goodness of Cheerios is ideal as a nutritious breakfast or snack for       kids,       teens       and       adults."       *See* http://www.generalmills.com/corporate/brands/brand.aspx?catID=53&groupID=19412, available on May 27, 2009.

12.     Defendant's website also represents that: "Our cereals can help lower your cholesterol!  As part of a heart healthy diet, the soluble fiber in Cheerios®, Honey Nut Cheerios®, and   Berry   Burst   Cheerios®   can   help   reduce   your   cholesterol!"   *See* http://www.cheerios.com/forAdults/Cholesterol/loweringcholesterol.aspx, available on May 27, 2009.

13.     Defendant makes similar health benefits representations in its television advertisements and other media and print advertisements televised, broadcast and distributed throughout the state.

14.     Earlier this year Defendant's CEO, Ken Powell, boasted that Defendant's cereal sales were experiencing rapid growth due in part to the Company's marketing campaign emphasizing the health       benefits       of       the       cereal.       *See* http://www.bloomberg.com/apps/news?pid=20601087&sid=akLaZ4Zwx6g0&refer=home, available on May 27, 2009.

15.     Shortly thereafter, the FDA took issue with Defendant's health benefits claims.  On May 5, 2009, the FDA issued a warning letter to Defendant regarding "serious violations" of the Federal Food, Drug and Cosmetic Act ("FDCA") based on the FDA's review of the Cheerios®

1   Toasted Whole Grain Oat Cereal labeling.  *See* Exhibit A, FDA "Warning Letter," dated May 5,

2   2009.

3     16. The FDA found the following statements on Defendant's Product packaging to be

4   misleading:

> • "you can Lower Your Cholesterol 4% in 6 weeks"
> • "Did you know that in just 6 weeks Cheerios can reduce bad cholesterol by an average of 4 percent? Cheerios is ... clinically proven to lower cholesterol. A clinical study showed that eating two 1 1/2 cup servings daily of Cheerios cereal reduced bad cholesterol when eaten as part of a diet low in saturated fat and cholesterol."

> These claims indicate that Cheerios® is intended for use in lowering cholesterol, and therefore in preventing, mitigating, and treating the disease hypercholesterolemia. Additionally, the claims indicate that Cheerios® is intended for use in the treatment, mitigation, and prevention of coronary heart disease through lowering total and "bad" (LDL) cholesterol. ...

11  *See* Exhibit A, FDA "Warning Letter," dated May 5, 2009, p. 1.

12    17. Further, the FDA found the referenced claims exceed those permitted for products

13  that have not obtained FDA approval for marketing as a drug:

> Because of these intended uses, the product is a drug within the meaning of section 201(g)(1)(B) of the Act [21 U.S.C. § 321 (g)P)(B)]. The product is also a new drug under section 201(p) of the Act [21 U.S.C. § 321(p)] because it is not generally recognized as safe and effective for use in preventing or treating hypercholesterolemia or coronary heart disease. Therefore, under section 505(a) of the Act [21 U.S.C. § 355(a)], it may not be legally marketed with the above claims in the United States without an approved new drug application.

18  *See* Exhibit A, FDA "Warning Letter," dated May 5, 2009, p. 1.

19    18. Referencing an FDA-issued regulation that authorizes labeling claims that associate

20  the soluble fiber found in whole grain oats with a reduced risk of coronary heart disease, the FDA

21  stated that while the Product packaging contains an authorized claim, the cited references to

22  cholesterol reduction are not made as part of the authorized claim:

> The cholesterol claim that mentions the clinical study is on the back of the Cheerios® box, completely separate from the health claim on the front label. Although the other cholesterol claim is on the same panel as the authorized health claim, its prominent placement on a banner in the center of the front label, together with its much larger font size, different background, and other text effects, clearly distinguish it from the health claim in the lower left corner.

*See* Exhibit A, FDA "Warning Letter," dated May 5, 2009, p. 2

19.     Even if the cholesterol claims were part of the authorized claims, the FDA said they would not qualify for inclusion with the authorized claim because to use the soluble fiber health claim, a product must comply with the specific requirements of the FDCA, including the requirement that the "claim not attribute any degree of risk reduction for coronary heart disease to diets that include foods eligible to bear the claim."  The FDA found that "the label of your Cheerios® cereal claims a degree of risk reduction for coronary heart disease by stating that Cheerios® can lower cholesterol four percent in six weeks."  *See* Exhibit A, FDA "Warning Letter," dated May 5, 2009, p. 2.

20.     The original Cheerios® label, as noted above, also makes a prohibited specific "risk reduction" claim by representing it can lower cholesterol by "10% in one month!"

21.     Because Defendant's Product packages refer consumers to Defendant's website for further information and the website similarly makes "health claims" about the Products, the FDA deemed Defendant's website was "labeling" pursuant to the FDCA.

22.     In reviewing the health benefits claims on Defendant's website, the FDA further determined the Products are "misbranded" in several respects.  First, the FDA determined the Products are "misbranded" due to the representation that "Heart-healthy diets rich in whole grain foods, can reduce the risk of heart disease."  The FDA stated that pursuant to the FDCA, such a claim must state that "diets low in saturated fat and cholesterol and high in fiber-containing fruit, vegetable, and grain products may reduce the risk of heart disease."  Defendant's website, however, "leaves out any reference to fruits and vegetables, to fiber content, and to keeping the levels of saturated fat and cholesterol in the diet low" and, therefore, "does not convey that all of these factors together help reduce the risk of heart disease and does not enable the public to understand the significance of the claim in the context of the total daily diet."  *See* Exhibit A, FDA "Warning Letter," dated May 5, 2009, p. 2.

23.     The FDA noted that health claims linking the consumption of whole grain foods to a reduced risk of heart disease must be authorized under the FDCA.  Although a similar claim stating that: "Diets rich in whole grain foods and other plant foods, and low in saturated fat and cholesterol,

1  may help reduce the risk of heart disease" has been authorized, that claim differs "in significant

2  ways" from Defendant's claims on its website.  The FDA drew the following comparison between

3  permissible claims and Defendant's claims:

4      To meet the requirements of the authorized claim, the claim must state that diets that
    are (1) rich in Whole grains and other plant foods, and (2) low in saturated fat and

5      cholesterol will help reduce the risk of heart disease. Instead, the claim on your
    website only states that diets rich in whole grains can reduce the risk of heart disease,

6      with no mention of other plant foods or of low saturated fat and cholesterol.

7  *See* Exhibit A, FDA "Warning Letter," dated May 5, 2009, p. 2.

8      24.    The FDA also found that the Products are "misbranded" as a result of the

9  representation on Defendant's website that: "Including whole grain as part of a healthy diet

10  may…[h]elp reduce the risk of certain types of cancers. Regular consumption of whole grains as

11  part of, a low-fat diet reduces the risk for some cancers, especially cancers of the stomach and

12  colon."  The FDA found that this health claim was not authorized because it "leaves out any

13  reference to fruits, vegetables, and fiber content" and "does not convey that all these factors together

14  help to reduce the risk of heart disease and does not enable the public to understand the significance

15  of the claim in the context of the total daily diet" in violation of the FDCA.  *See* Exhibit A, FDA

16  "Warning Letter," dated May 5, 2009, p. 2.

17      25.    The FDA also noted that health claims linking the consumption of whole grain foods

18  to a reduced risk of certain cancers must be authorized under the FDCA.  Although a similar claim

19  that: "Diets rich in whole grain foods and other plant foods,…may help reduce the risk of…certain

20  cancers" has been authorized, that claim differs "in significant ways" from Defendant's claims on its

21  website.  Specifically, the FDA states that Defendant's claim:

22      [D]oes not mention "other plant foods." Also, by using the language "especially cancers of
    the stomach and colon" the claim on your website emphasizes the relationship between

23      whole grain foods and stomach and colon cancers as compared to other cancers, suggesting a
    greater degree of risk reduction or stronger evidence for the relationship between whole grain

24      foods and risk of those two cancers. The claim authorized through the notification procedure
    does not emphasize the relationship between whole grain foods and stomach and colon

25      cancer as compared to other cancers.

26  *See* Exhibit A, FDA "Warning Letter," dated May 5, 2009, p. 3.

27

28

26.     The FDA noted that its letter was not intended as "an all-inclusive review of your products and their labeling. It is your responsibility to ensure that all of your products are in compliance with the Act and its implementing regulations." *See* Exhibit A, FDA "Warning Letter," dated May 5, 2009, p. 3.

27.     The labeling claims on the Products represent that the Products have unique, drug-quality properties that will reduce total and "bad" cholesterol levels and the risk of heart disease when eaten. However, the Products' properties in this respect are not unique, and as the FDA said, Cheerios® "is not generally recognized as safe and effective for use in preventing or treating hypercholesterolemia or coronary heart disease."

28.     As the manufacturer and distributor of the Products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in the Products and is in a superior position to learn of the effects and has learned of the effects its Products will have on consumers.

29.     Plaintiff contends that he has been misled by Defendant's labeling and health benefits advertising claims into purchasing and paying for Products that were not unique or drug-equivalent in their cholesterol-lowering properties, and that he has, as a direct result, suffered actual damages in that he has been deprived of the benefit of his bargain and has spent money on Products that lacked the value he was led by Defendant to believe it had.

## PLAINTIFF'S EXPERIENCE

30.     Plaintiff purchased 4-5 boxes of Cheerios® during the last six months, and paid the retail price of approximately $3-5 for each Cheerios® package.

31.     Plaintiff read the package and consumed the Cheerios® as directed to lower his cholesterol.

32.     Plaintiff purchased and consumed the Product believing the health benefits claims on the Product packages and in Product advertising.

33.     Plaintiff relied on the health benefits claims set forth above, as well as others similar to them, found on the Product packages and as advertised on television. The health benefits claims

1    were a material factor in Plaintiff Choi's decision to purchase and consume the Cheerios® Product.

2    Plaintiff's reliance on Defendant's representations was reasonable given that Defendant has a

3    reputation as a reliable and trustworthy company.

4          34.    On or about May 25, 2009, Plaintiff learned of the unlawful, unfair, misleading or

5    deceptive labeling and advertising practices concerning Defendant's health benefits claims.

6          35.    Plaintiff has suffered injury in fact and lost money and property as a result of the

7    alleged misconduct.  He has been injured in the amount paid for the Products.

8                              **CLASS ALLEGATIONS**

9          36.    Plaintiff brings this action on his own behalf and as a Class action pursuant to Rule

10    23(a) and (b)(2) of the Federal Rules of Civil Procedure and seeks certification of the following

11    Class:

12                All California residents who from and after June 2, 2005 purchased
                  any of the Cheerios Products.[1]
13
      37.    Excluded from the Class is Defendant, any person, firm, trust, corporation, officer,
14
      director or other individual or entity in which the Defendant has a controlling interest or which is
15
      related to or affiliated with the Defendant, and the legal representatives, heirs, successors-in-interest
16
      or assigns of any such excluded party.
17
      38.    Plaintiff and the members of the Class are so numerous that joinder of all members
18
      individually, in one action or otherwise, is impractical.
19
      39.    This action involves questions of law and fact common to Plaintiff and all members
20
      of the Class which include:
21
                  (a)    Whether Defendant has engaged in an unlawful, unfair, misleading or
22
                  deceptive business act or practice through its labeling and advertising practices;
23

24   _____

25   [1] The "Cheerios Products" include: Apple Cinnamon Cheerios, Banana Nut Cheerios, Berry Burst
     Cheerios - Triple Berry, Cheerios, Cheerios Oat Cluster Crunch, Frosted Cheerios, Fruity Cheerios,
26   Honey Nut Cheerios, Multi Grain Cheerios, Yogurt Burst Cheerios – Strawberry, And Yogurt Burst
     Cheerios – Vanilla.
27

28

      (b)     Whether Defendant's labeling and advertising misrepresented the nature of the Products; and

      (c)     Whether Plaintiff and Class members are entitled to restitution of the monies they paid to purchase the Products and disgorgement of profits Defendant received from the sale of its Products.

40.    Plaintiff's claims are typical of the claims of the members of the Class. The named Plaintiff is a member of the Class of victims described herein.

41.    The named Plaintiff is willing and prepared to serve the Court and proposed Class in a representative capacity with all of the obligations and duties material thereto. Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to or which directly and irrevocably conflict with, the interests of the other members of the Class.

42.    The self-interests of the named Class representative are co-extensive with, and not antagonistic to, those of the absent Class members. The proposed representative will undertake to represent and protect the interests of the absent Class members.

43.    The named Plaintiff has engaged the services of counsel indicated below. Said counsel are experienced in complex class litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent the named Class representative and absent Class members.

44.    This action is brought under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to all members of the Class and final injunctive relief is appropriate to the Class as a whole.

45.    Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than in piecemeal individual determinations.

46.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

**FIRST CAUSE OF ACTION**
**VIOLATION OF UNFAIR COMPETITION LAW**
**BUS. & PROF. CODE § 17200**

47.     Plaintiff incorporates by reference each of the preceding allegations as though fully set forth herein.

48.     California Business & Professions Code §17200, *et seq*. prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice," or any "unfair, deceptive, untrue or misleading advertising."

49.     Defendant violated California Business & Professions Code §17200's prohibition against engaging in an "unlawful" business act or practice, by, *inter alia*, misrepresenting on Product packaging, in commercial advertisements, on its website and in other marketing materials and meida that the Products have unique, drug-quality properties that will reduce total and "bad" cholesterol levels and the risk of heart disease and that the Products are safe and effective for the prevention or treatment of hypercholesterolemia or coronary heart disease in violation of the FDCA, Cal. Bus. & Prof. Code §17500 and common law.

50.     Defendant also violated California Business & Professions Code §17200's prohibition against engaging in an "unfair" business act or practice by, *inter alia*, misrepresenting on Product packaging, in commercial advertisements, on its website and in other marketing materials and media that the Products have unique, drug-quality properties that will reduce total and "bad" cholesterol levels and the risk of heart disease and that the Products are safe and effective for the prevention or treatment of hypercholesterolemia or coronary heart disease.  Defendant engaged in its deceptive marketing campaign to, *inter alia*, gain an unfair competitive advantage over other ready-to-eat cereal manufacturers who did not engage in similar misleading advertising practices.  By virtue of its unfair marketing practice, Defendant realized an increase in its cereal sales by 13% in the third quarter ending February 2009.  Further, Defendant's conduct caused and continues to cause substantial injury to consumers.  The gravity of Defendant's alleged wrongful conduct outweighs any purported benefits attributable to such conduct.

51.    The foregoing conduct also violates Business & Profession Code §17200's prohibitions against "fraudulent" or deceptive business practices. Defendant's misrepresentations in Product packaging, in commercial advertisements, on its website and in other marketing materials and media that the Products have unique, drug-quality properties that will reduce total and "bad" cholesterol levels and reduce the risk of heart disease and that the Products are safe and effective for the prevention or treatment of hypercholesterolemia or coronary heart disease are likely to and did deceive reasonable consumers, including Plaintiff, into believing the Products had specific drug-quality properties.

52.    Plaintiff reserves the right to allege other violations of law which constitute other "unlawful, unfair or fraudulent business act[s] or practice[s]."

53.    Plaintiff has been actually injured by Defendant's unlawful, unfair, deceptive and fraudulent business acts and practices.

54.    As a result of Defendant's violations of the UCL, Plaintiff and Class members are entitled to equitable relief in the form of full restitution of all monies paid for Defendant's Products.

## SECOND CAUSE OF ACTION
## UNJUST ENRICHMENT

55.    Plaintiff incorporates by reference each of the preceding allegations as though fully set forth herein.

56.    Plaintiff and Class members conferred a benefit on Defendant by purchasing the Products.

57.    Defendant appreciated and/or realized the benefits in the amount of the profits it earned from sales of the Products to Plaintiff and Class members.

58.    Defendant has profited from its unlawful, unfair, misleading and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

59.    Plaintiff does not have an adequate remedy at law against Defendant.

60.     Plaintiff and Class members are entitled to disgorgement of the profits derived from the sale of the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

A.     Certifying this action as a Plaintiff class action as set forth above;

B.     Awarding Plaintiff and Class members equitable relief in the form of restitution of all monies paid for the Products and disgorgement of the profits derived from the sale of the Products;

C.     Awarding Plaintiff pre-judgment and post-judgment interest as provided by law;

D.     Awarding Plaintiff attorneys' fees and costs; and

E.     Awarding such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: June 2, 2009                    BONNET, FAIRBOURN, FRIEDMAN
                                       & BALINT, P.C.


                                       _____
                                       Todd D. Carpenter
                                       600 W. Broadway, Suite 900
                                       San Diego, California 92101
                                       Telephone: 619-756-6978
                                       Facsimile: 602-798-5860

                                       BONNETT, FAIRBOURN, FRIEDMAN
                                       & BALINT, P.C.
                                       Andrew S. Friedman
                                       Elaine A. Ryan
                                       Patricia N. Syverson
                                       2901 N. Central Avenue, Suite 1000
                                       Phoenix, Arizona 85012-3311
                                       Telephone: 602-274-1100
                                       Facsimile: 602-798-5860

                                       Attorneys for Plaintiff

CLASS ACTION COMPLAINT

13

# EXHIBIT A



# U.S. Food and Drug Administration



**Department of Health and Human Services**

Public Health Service
Food and Drug Administration
Minneapolis District Office
Central Region
250 Marquette Avenue, Suite 600
Minneapolis, MN 55401
Telephone: (612) 758-7114
FAX: (612) 3344142

May 5,2009

**WARNING LETTER**

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Refer to MIN 09 -18

Ken Powell
Chairman of the Board and CEO
General Mills
One General Mills Boulevard
Minneapolis, Minnesota 55426

Dear Mr. Powell:

The Food and Drug Administration (FDA) has reviewed the label and labeling of your Cheerios® Toasted Whole Grain Oat Cereal. FDA's review found serious violations of the Federal Food, Drug, and Cosmetic Act (the Act) and the applicable regulations in Title 21, Code of Federal Regulations (21 CFR). You can find copies of the Act and these regulations through links in FDA's home page at http://www.fda.gov.

**Unapproved New Drug**

Based on claims made on your product's label, we have determined that your Cheerios® Toasted Whole Grain Oat Cereal is promoted for conditions that cause it to be a drug because the product is intended for use in the prevention, mitigation, and treatment of disease. Specifically, your Cheerios® product bears the following claims ort its label:

- "you can Lower Your Cholesterol 4% in 6 weeks" "
- "Did you know that in just 6 weeks Cheerios can reduce bad cholesterol by an average of 4 percent? Cheerios is ... clinically proven to lower cholesterol. A clinical study showed that eating two 1 1/2 cup servings daily of Cheerios cereal reduced bad cholesterol when eaten as part of a diet low in saturated fat and cholesterol."

These claims indicate that Cheerios® is intended for use in lowering cholesterol, and therefore in preventing, mitigating, and treating the disease hypercholesterolemia. Additionally, the claims indicate that Cheerios® is intended for use in the treatment, mitigation, and prevention of coronary heart disease through, lowering total and "bad" (LDL) cholesterol. Elevated levels of total and LDL cholesterol are a risk factor for coronary heart disease and can be a sign of coronary heart disease. Because of these intended uses, the product is a drug within the meaning of section 201(g)(1)(B) of the Act [21 U.S.C. § 321 (g)P)(B)]. The product is also a new drug under section 201(p) of the Act [21 U.S.C. § 321(p)] because it is not generally recognized as safe and effective for use in preventing or treating hypercholesterolemia or coronary heart disease. Therefore,under section 505(a) of the Act [21 U.S.C. § 355(a)], it may not be legally marketed with the above claims in the United States without an approved new drug application.

FDA has issued a regulation authorizing a health claim associating soluble fiber from whole grain oats with a reduced risk of coronary heart disease (21 CFR 101.81). Like FDA's other regulations authorizing health Claims about a food substance and reduced risk of coronary heart disease, this regulation provides for the claim to include an optional statement, *as part of* the health claim, that the substance reduces the risk of coronary heart disease through the intermediate link of lowering blood total and LDL cholesterol. See 21 CFR 101.81(d)(2),-(3). Although the lower left corner of the Cheerios® front label contains a soluble fiber/coronary heart disease health claim authorized under 21 CFR 101.81, the two claims about lowering cholesterol are not made as part of that claim but rather are presented as separate, stand-alone claims through their location on the package and other label design features. The cholesterol claim that mentions the clinical study is on the back of the Cheerios® box, completely separate from the health claim on the front label. Although the other cholesterol claim is on the same panel as the authorized health claim, its prominent placement on a banner in the center of the front label, together with its much larger font size, different background, and other text effects, clearly distinguish it from the health claim in the lower left corner.

Additionally, even if the cholesterol-lowering claims were part of an otherwise permissible claim, under 21 CFR 101.81, the resulting claim language still would not qualify for the use of the soluble fiber health claim. To use the soluble fiber health claim, a product must comply with the claim specific requirements in 21 CFR 101.81, including the requirement that the claim not attribute any degree of risk reduction for coronary heart disease to diets that include foods eligible to bear the claim. See 21 CFR 101.81(c)(2)(E). However, the label of your Cheerios® cereal claims a degree of risk reduction for coronary heart disease by stating that Cheerios® can lower cholesterol by four percent in six weeks. High blood total and LDL cholesterol levels are a surrogate endpoint for coronary heart disease; therefore, the cholesterol-lowering claims on the Cheerios® label attribute a degree of risk reduction for coronary heart disease because if total and LDL cholesterol levels decline, the risk of coronary heart disease declines as well.

**Misbranded Food:**

Your Cheerios ® product is misbranded within the meaning of section 403(r)(1)(B) of the Act [21 U.S.C. § 343(r)(1)(B)] because it bears unauthorized health claims in its labeling. We have determined that your website www.wholegrainnation.com is labeling for your Cheerios® product under section 201(m) of the Act [21 U.S.C. § 321 (m)] because the website address appears on the product label. This website bears the following unauthorized health claims:

- "Heart-healthy diets rich in whole grain foods, can reduce the risk of heart disease."

This health claims misbrands your product because it has not been authorized either by regulation [see section 343(r)(3)(A)-(B) of the Act [21 U.S.C. § 343(r)(3)(A)(B)]] or under authority of the health claim notification provision of the Act [see section'343(r)(3)(C) of the Act [21 U.S.C. § 343(r)(3)(G)]]. Although FDA has issued a regulation authorizing a health claim associating fiber-containing grain products with a reduced risk of coronary heart disease (21 CFR 101.77), the claim on your website does not meet the requirements for this claim. For example, under section 101.77(c)(2), the claim must state that diets low in saturated fat and cholesterol and high in fiber-containing fruit, vegetable, and grain products may reduce the risk of heart disease. The claim on your website leaves out any reference to fruits and vegetables, to fiber content, and to keeping the levels of saturated fat and cholesterol in the diet low. Therefore, your claim does not convey that all these factors together help to reduce the risk of heart disease and does not enable the public to understand the significance of the claim in the context of the total daily diet (see section 343(r)(3)(B)(iii) of the Act [21 U.S.C.§ 343(r)(3)(B)(iiii]).

In addition to the health claim authorized by regulation in 21 CFR 101.77, other health claims linking the consumption of whole grain foods to a reduced risk of heart disease have been authorized through the notification procedure in section 403(r)(3)(C) of the Act. Of those authorized claims, the one closest to the claim on your website states: "Diets rich in whole grain foods and other plant foods, and low in saturated fat and cholesterol, may help reduce the risk of heart disease.t" Although the claim on your website also concerns whole grains and reduced risk of heart disease, it is different from the authorized claim in significant ways. To meet the requirements of the authorized claim, the claim must state that diets that are (1) rich in Whole grains and other plant foods, and (2) low in saturated fat and cholesterol will help reduce the risk of heart disease) Instead, the claim on your website only states that diets rich in whole grains can reduce the risk of heart disease, with no mention of other plant foods or of low saturated fat and cholesterol.

- "Including whole grain as part of a healthy diet may ... [h]elp reduce the risk of certain types of cancers. Regular consumption of whole grains as part of, a low-fat diet reduces the risk for some cancers, especially cancers of the stomach and colon."

This health claim misbrands your product because it has not been authorized either by regulation [see section 343 (r)(3)(A)-(B) of the Act [21 U.S.C. § 343(r)(3)(A)(B)]] or under authority of the health claim notification provision of the Act [see section 343(r)(3)(C) of the Act [21 U.S.C. § 343(r)(3)(C)]]. Although FDA has issued a regulation authorizing a health claim associating fiber-containing grain products with a reduced risk of cancer (21 CFR 101.76), the claim on your website does not meet the requirements for the authorized claim.For example, under section 101.76(c)(2) the claim must state that diets high in fiber-containing grain products, fruits, and vegetables may reduce the risk of some cancers. The claim on your website leaves out any reference to fruits, vegetables, and fiber content. Therefore, your claim does not convey that all these factors together help to reduce the risk of heart disease and does not enable the public to understand the significance of the claim in the context of the total daily diet [see section 343(r)(3)(B)(iii) of the Act [21 U.S.C. § 343(r)(3)(B)(iii)]].

In addition to the health claim authorized by regulation in 21 CFR 101.76, a health claim linking the consumption of whole grain foods to a reduced risk of certain cancers has been authorized through the notification procedure in section 403(r)(3)(C) of the Act. The authorized claim is: "Diets rich in whole grain foods and other plant foods ... may help reduce the risk of... certain cancers."₂ Although the claim on your website also concerns whole grains and reduced risk of some cancers, it is different from the authorized claim in significant ways. For example, the authorized claim states that diets rich in whole grain foods and "other plant foods" may help reduce the risk for certain cancers. However, the claim on your website does not mention "other plant foods." Also, by using the language "especially cancers of the stomach and colon" the claim on your website emphasizes the relationship between whole grain foods and stomach and colon cancers as compared to other cancers, suggesting a greater degree of risk reduction or stronger evidence for the relationship between whole grain foods and risk of those two cancers. The claim authorized through the notification procedure does not emphasize the relationship between whole grain foods and stomach and colon cancer as compared to other cancers.

This letter is not intended to be an all-inclusive review of your products and their labeling. It is your responsibility to ensure that all of your products are in compliance with the Act and its implementing regulations.

Failure to promptly correct the violations specified above may result in enforcement action without further notice. Enforcement action may include seizure of violative products and/or injunction against the manufacturers and distributors of violative products.

Please advise this office in writing 15 days from your receipt of this letter of the specific steps you have taken to correct the violations noted above and to ensure that similar violations do not occur. Your response should include any documentation necessary to show that correction has been achieved. If you cannot complete all corrections before you respond, state the reason for the delay and the date by which you will complete the corrections.

Please send your reply to the attention of Tyra S. Wisecup, Compliance Officer, at the address in the letterhead. If you have any questions regarding this letter, please contact Ms. Wisecup at (612) 758-7114.

Sincerely,

/s/

W. Charles Becoat
Director
Minneapolis District

TSW/cd

1 See "Health Claim Notification for Whole Grain Foods with Moderate Fat Content," December 9, 2003 (http://www.cfsan.fda.gov/~dms/f1grain2.html).

2 See "Health Claim Notification for Whole Grain Foods," July 1999 (http://www.cfsan.fda.gov/-dms/flgrain2.html).

---

COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

HOBIN CHOI, on behalf of himself and all others similarly situated

**DEFENDANTS**

General Mills, Inc., a Delaware corporation

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Bonnett, Fairbourn, Friedman & Balint, PC
2901 N. Central Ave., Ste. 1000
Phoenix, AZ 85012
(602) 274-1100

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  
☐ 2 Removed from State Court  
☐ 3 Remanded from Appellate Court  
☐ 4 Reinstated or Reopened  
☐ 5 Transferred from another district (specify):  
☐ 6 Multi-District Litigation  
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT: $_____**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Cal. Bus. & Prof. Code §17200.  Unjust Enrichment

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No  ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**   Case Number:   **CV09-3940**

CV-71 (07/05)                    CIVIL COVER SHEET                    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

---

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No   ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　 ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　 ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　 ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

---

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

　　Plaintiff resides in Los Angeles County, California

List the California County, or State if other than California, in which **EACH** named defendant resides. (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.

　　Defendant's principal place of business is located in Minneapolis, Minnesota.

**List the California County**, or State if other than California, in which **EACH** claim arose. (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.

　　Claims asserted arose in Los Angeles County, California

---

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _~~Stuart M. Dymson~~_　　Date _6-2-09_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

COPY

BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, PC
2901 N. Central Ave.
Suite 1000
Phoenix, Az  85012

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Hobin Choi, on behalf of himself and all others similarly situated<br><br>PLAINTIFF(S)<br><br>v.<br><br>General Mills, Inc., a Delaware corporation<br><br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV09-3940 GW (CWx)<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S):  General Mills, Inc.

A lawsuit has been filed against you.

Within   20   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Patricia N. Syverson _____ , whose address is  2901 N. Central Ave., Ste. 1000, Phoenix, AZ  85012 _____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:     JUN - 2 2009              By:  _____
                                                    NATALIE LONGORIA
                                                         Deputy Clerk

                                              (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

1198

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

## CV09- 3940 GW (CWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[_] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[_] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY